UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

PERRIS D. CANNADAY,

        Petitioner,

        v.                                    Case No. 10-C-0018

UNITED STATES OF AMERICA,

        Respondent.

---

DECISION AND ORDER DENYING AS MOOT PERRIS CANNADAY'S MOTION TO AMEND/CORRECT MOTION (DOC. 6), DENYING AMENDED § 2255 MOTION, DENYING CERTIFICATE OF APPEALABILITY, AND DISMISSING CASE

After Perris D. Cannaday pleaded guilty to possessing five grams or more of cocaine base in violation of 21 U.S.C. § 844(a), this court sentenced him to 135 months imprisonment. Cannaday filed a direct appeal, and the Seventh Circuit Court of Appeals affirmed. *United States v. Cannaday*, 347 F.3d. Appx. 242, 2009 WL 3198747 (7th Cir. 2009). Now, Cannaday is proceeding under 28 U.S.C. § 2255 arguing that his conviction and sentence were imposed in violation of the Constitution.[1] For the reasons set forth below, the motion will be denied.

    Cannaday was charged in Milwaukee County Circuit Court following a traffic stop in which he was found carrying 6.87 grams of crack cocaine. A December 2004 search

---

[1] Cannaday previously brought a 42 U.S.C. § 1983 action against the officers involved in the arrest and the search of his residence claiming that the officers violated his rights by entering his house without a warrant and then seizing the drugs without probable cause. This court determined that the state court's suppression ruling was not preclusive and that qualified immunity protected the officers because they obtained a facially valid warrant before searching his house. The Seventh Circuit Court of Appeals affirmed. *Cannaday v. Sandoval,* 468 Fed. Appx. 563, 2012 WL 313731 (7th Cir. 2012).

of Cannaday's home revealed approximately 1474.77 grams of cocaine base. Eventually, the Milwaukee County Circuit Court case was dismissed after the court suppressed the evidence found in the home during the execution of a search warrant. On September 12, 2006, the grand jury in the Eastern District of Wisconsin returned a two-count superseding indictment charging Cannaday with possession with intent to distribute, and possession of five or more grams of crack cocaine in violation of 21 U.S.C. § 844(a). Cannaday signed a plea agreement and pleaded guilty on December 19, 2006, acknowledging that the relevant conduct attributable to him was 500g-1.5 kg of crack cocaine.

Cannaday was scheduled for sentencing on July 6, 2007. However, after hearing from him and counsel, the court adjourned the hearing to give the U.S. Probation Office time to gather additional information. Cannaday did not object to the presentence report and on November 21, 2007, the court imposed a sentence of 135 months imprisonment based on relevant conduct of 500g-1.5kg. When asked by the court whether he wanted to appeal his conviction and/or sentence, Cannaday responded no.

However, on January 2, 2008, Cannaday filed a direct appeal arguing that he was denied the right to allocute and that the district court should not have considered the drugs sized from his house as relevant conduct. Because he did allocute and waived any objection to the drugs, the Seventh Circuit affirmed. The Seventh Circuit declined to address Cannaday's ineffective assistance of counsel claim that the defense attorney stipulated to the inclusion of 1,474 grams of crack as relevant conduct and failed to object to being considered at sentencing.

Cannaday moved to amend the pending § 2255 motion and filed an amended brief, but no motion was required inasmuch as the government had not been ordered to respond.

2

In his amended brief, Cannaday contends that (1) the district court violated his Fourth, Fifth, and Fourteenth Amendment rights by using the 1,474 grams of cocaine as relevant conduct during sentencing, (2) counsel was ineffective in stipulating that the drugs found in Cannaday's residence would be used as relevant conduct for purposes of determining the base offense level under the sentencing guidelines, and (3) counsel was ineffective for failing to file a motion to suppress evidence that was found in his house and obtained illegally by state officials.

Cannaday's counsel agrees with the government that Cannaday cannot reargue his claims raised on direct appeal with the Seventh Circuit, and that "this appears to bar Cannaday from having this Court rule on Grounds One and Three as set forth in his 'final' Amended Memorandum of law in Support of 2255 Motion." Moreover, on appeal of the judgment of conviction, the Seventh Circuit focused on the plea agreement wherein Cannaday stipulated that the government could establish by a preponderance of the evidence that Cannaday was responsible for between 500 grams to 1.5 kilograms of cocaine base, and that the corresponding base offense level applied. Moreover, Cannaday admitted through counsel that 1,474 grams was relevant conduct. Therefore, the Seventh Circuit concluded that the district court acted properly when it considered the stipulations in the plea agreement and the facts in the presentence report that Cannaday accepted without objection. *Cannaday*, 2009 WL 3198747 at *3. Nevertheless, in pursuing the pending motion, Cannaday insists the second claim is ripe for review because the Seventh Circuit declined to consider the argument.

The second ground raised by Cannaday in his amended memorandum was that "counsel was ineffective during plea negotiations for submitting a letter stipulating that he

3

acknowledged that the drugs found in his residence would be used as relevant conduct for purposes of determining his base offense level." Specifically, Cannaday submits that counsel was ineffective "for informing the Probation Officer 'by letter' without defendants authorization, that the defendant stipulated to the facts supporting the inclusion of the 1,474 grams of cocaine as relevant conduct, and by failing to object to its inclusion as relevant conduct at sentencing." (Case No. 10-C-18, doc. 7 at p. 4.) Additionally, he then asserts that if he had competent counsel he "would have been aware that these amounts could not be lawfully used as a relevant conduct" because the 1,474 grams had been found during an illegal search and the amounts could not have been used because he pleaded guilty to mere possession of the crack cocaine. (*Id.* at p. 8.)

A party claiming ineffective assistance of counsel bears the burden of showing (1) that his trial counsel's performance fell below objective standards for reasonably effective representation and (2) that this deficiency prejudiced the defense. *Strickland v.. Washington*, 466 U.S. 668, 688–94 (1984); *Wyatt v. United States*, 574 F.3d 455, 457 (7th Cir. 2009), cert. denied, 130 S. Ct. 2431 (2010). To satisfy the first prong of the *Strickland* test, the petitioner must direct the court to specific acts or omissions of his counsel. *Wyatt*, 574 F.3d at 458. The court then considers, in light of all of the circumstances, whether counsel's performance was outside the wide range of professionally competent assistance. *Id.* The court's review of counsel's performance must be "highly deferential[,] ... indulg[ing] a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Counsel's performance must be evaluated keeping in mind that an attorney's trial strategies are a matter of professional

4

judgment and often turn on facts not contained in the trial record. *Strickland*, 466 U.S. at 689.

To satisfy the second prong of the *Strickland* test, Cannaday must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different, such that the proceedings were fundamentally unfair or unreliable. *United States v. Jones*, 635 F.3d 909, 915–16 (7th Cir. 2011); *Adams v. Bertrand*, 453 F.3d 428, 435 (7th Cir. 2006). "A reasonable probability is defined as one that is sufficient to undermine confidence in an outcome." *Adams*, 453 F.3d at 435 (citing *Strickland*, 466 U.S. at 694).

In his affidavit, Cannaday never mentions the negotiation of the plea. Rather, he avers that he did not "consent, agree, nor sign the document that 'counsel' forwarded to the Probation Department as a stipulation" that he would agree to allow the 1,474 grams of cocaine base found incident to the illegal search and seizure to increase the guideline range. (Case No. 10-C-18, doc. 8 at 2.) Regardless, because Cannaday stipulated to the relevant conduct in the plea agreement and discussed the plea at length with this court several months *prior* to the letter counsel forwarded to probation, he cannot satisfy his burden under *Strickland*.

Cannaday signed the plea agreement on the day of his guilty plea – December 19, 2006. (Case No. 06-CR-158, doc. 25.) In the plea agreement, he said that he would plead guilty to count two, which charged him with knowingly and intentionally possessing a mixture and substance containing more than five grams of cocaine base in the form of crack cocaine. (*Id.* at ¶ 4.) Moreover, he admitted that the custodial search revealed 6.87

5

grams of cocaine base (field-tested) in his front sweatshirt pocket. Cannaday further agreed that the court would calculate the sentencing guideline by considering relevant conduct even if the relevant conduct was not the subject of the offense to which he was pleading guilty. (*Id.* at ¶ 16. ) Significantly, he acknowledged that "based on evidence available to the government and admissible against the defendant, the government is able to establish by a preponderance of the evidence that the drug quantity attributable to the defendant is between 500 grams and 1.5 kilograms of cocaine base in the form of 'crack' cocaine." (*Id.* at ¶ 17.) Further, during the plea hearing, Cannaday testified that he read the plea agreement, had no drugs in his system, and was getting along well with his attorney. (Case No. 06-CR-158, doc. 54, at p. 7.)

Notably, Cannaday challenges counsel's effectiveness in plea negotiations but launches no attack on the voluntary nature of his guilty plea. He testified that he had no problems reading the plea agreement, that he was not under the influence of any drugs, and that he got along with counsel "very well." (Doc. 54, pp. 5-7.) Indeed, Cannaday said that he was very satisfied with his attorney's work. (*Id.*, at p. 8.)

Defense counsel informed this court that he had reviewed the evidence in the government's possession with Cannaday, as well as the factual and legal challenges and the relevant sentencing guidelines. (*Id.*, at p. 9.) Cannaday agreed with counsel's representations. He then told the court that he was prepared to plead guilty to count two and that he was aware that he faced twenty years with a mandatory minimum of five years. (*Id.*, at pp. 10-11.) Moreover, Cannaday told the court that he was aware that it would be able to consider relevant conduct including drug weight. (*Id.*, at p. 13.) Thus, by

6

acknowledging in the plea agreement that he was responsible for far more than the 6.87 grams found in his sweatshirt pocket, he cannot argue that counsel's subsequent letter to probation adversely affected him at sentencing.

The letter Cannaday references is a part of the record and was sent to probation three months after the plea. That letter did not increase the guideline range or subsequent imprisonment because Cannaday acknowledged at paragraph 18 of the plea agreement that the parties "agree to recommend to the sentencing court that the applicable base offense level for the offense charged in County Two is 36 under the Sentencing Guidelines manual § 2D1.1(c)(2)." (Case No. 06-CR-158, doc. 25 at ¶ 18.)

Defense counsel's letter sent to probation simply underscored what Cannaday had already admitted in the plea agreement - the quantity of crack cocaine attributable to him was between 500 grams and 1.5 kilograms. The March 6, 2007, letter from defense counsel to probation – filed with this court on July 5, 2007 – stated as follows:

> Cannaday subsequently moved to suppress the cocaine which had been seized from his home on grounds that the Search Warrant which authorized it was not supported by probable cause. Milwaukee County Circuit Court Judge William Sosnay ultimately granted that motion, and ordered the suppression of any and all evidence seized during the December 10, 2004, Search Warrant execution. Subsequently, the State case against Mr. Cannaday was dismissed. On June 27, 2006, the government issued the instant federal prosecution against Cannaday.
>
> Pursuant to the terms of his Plea Agreement, Cannaday pled guilty to Count Two of the Instant Indictment. Notwithstanding Judge Sosnay's determination that this evidence had been seized illegally, per Paragraph 17 of his Plea Agreement, Cannaday acknowledged that the cocaine seized from his home pursuant to the December 10, 2004, Search Warrant execution would be usable in determining his relevant conduct.

(Case No. 06-CR-158, Doc. 32-2.)

The court further notes that it conducted sentencing hearings on July 6, 2007, and November 21, 2007. (Case No. 06-CR-158, docs. 55 and 58.) In each, it heard from defense counsel and Cannaday. Cannaday told the court on July 6, 2007, that he looked at the presentence report with counsel and that he was satisfied that he and counsel had the opportunity to consider all of his concerns. (Case No. 06-CR-158, doc. 58 at. P. 3.) Defense counsel had no issues beyond an agreement with all parties that there should not be a two-level enhancement to the criminal history category because the offense date was incorrectly stated. (*Id.*) Defense counsel argued that Cannaday's history was remarkable for the absence of criminal activity prior to December of 2004:

> December 10 of '04 Mr. Cannaday is arrested on the basis of what turns out to be a phantom, an invalid warrant when they do a search of his person, find 6.87 grams of crack cocaine; and then the MP goes and gets a search warrant, and they search his home, and they find in the home significantly more cocaine; and I'm not going [to] short-sell that. It was about 1,400 grams of crack that was found in the home.
>
> I'm not certain that in terms of who that belonged to, the sole person was Mr. Cannaday, but I think something - somewhat to his credit he's the guy who has certainly taken undoubtedly a very hard fall in relation to that as is chronicled in our version of the offense. That search was deemed by a circuit court judge to be unlawful; and all of that evidence was ordered suppressed and notwithstanding – I understand the law as relates to these proceedings, and that still counts as relevant conduct here, and the plea agreement sets forth and says as much. He is prosecuted in state court but after the cocaine seized from the home is suppressed that prosecution is dismissed, and then he ultimately resurfaces here last summer.

(*Id.* at pp. 9-10.) Cannaday listened to defense counsel, reviewed the plea agreement referencing the suppression of the cocaine base seized from his home as well as his stipulation to the use of those drugs in the calculation of relevant conduct, and had the opportunity to object or otherwise explain his position to this court. In addition, he had the opportunity to return to this court three months later for the continued sentencing and again

8

failed to raise any concerns. When asked, Cannaday said that he and counsel had sufficient time to consider all aspects of sentencing with his case. (Case No. 06-CR-158, doc. 55. at p. 3.)

Attorney Christopher J. Cherella filed a reply brief on behalf of Cannaday expressing the main issue as "whether or not Cannaday allowed his trial counsel to send a letter of stipulation to the probation department acquiescing in the 1,474 grams found in the residence." (Case No. 10-C-18, doc. 16 at p. 4.) Regardless of whether Cannaday allowed his counsel to send the letter to probation, he entered a knowing and voluntary plea to this court based on a drug quantity that included the drugs found in his home. Moreover, the drugs found in his home could be considered as relevant conduct at sentencing regardless of whether it had been suppressed in state court. *United States v. Brimah*, 214 F.3d 854, 858 (7th Cir. 2000). For all of these reasons, Cannaday has not satisfied his burden under *Strickland* and a hearing is unnecessary.

As a final matter, this court denies a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2255 Proceedings. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The substantial showing standard is met when reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Barefoot v. Estelle*, 463 U.S. 880, 893 & n. 4 (1983). Because the decision of the Seventh Circuit and the evidence in the record

9

foreclose the grounds that Cannaday attempts to assert, the court declines to issue a certificate of appealability.

Now, therefore,

IT IS ORDERED that Perris Cannaday's motion to amend/correct § 2255 motion is denied as moot.

IT IS FURTHER ORDERED that Cannaday's amended § 2255 motion is denied.

IT IS FURTHER ORDERED that a certificate of appealability is denied.

IT IS FURTHER ORDERED that this case is dismissed.

Dated at Milwaukee, Wisconsin, this 7th day of March, 2013.

BY THE COURT

/s/ C. N. Clevert, Jr.
C. N. CLEVERT, JR.
U. S. DISTRICT JUDGE

10

Case 2:10-cv-00018-CNC    Filed 03/07/13    Page 10 of 10    Document 19